1  Michael C. Ormsby
   United States Attorney
2  Eastern District of Washington
   Tyler H.L. Tornabene
3  K. Jill Bolton
   Assistant United States Attorneys
4  Post Office Box 1494
   Spokane, WA 99210-1494
5  Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 1 6 2011

JAMES R. LARSEN, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

6              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF WASHINGTON
7

8  UNITED STATES OF AMERICA,              )   **CR-11-159-RHW**
                                          )
9            Plaintiff,                    )   **INDICTMENT**
                                          )
10      vs.                                )   Vio:  **18 U.S.C. § 1343, Wire**
                                          )         **Fraud**
11 DORIS E. NELSON d/b/a                   )         (Counts 1-71)
   THE LITTLE LOAN SHOPPE;                 )
12 0738106 B.C. LTD.;                      )         **18 U.S.C. § 1341, Mail**
   0738116 B.C. LTD.;                      )         **Fraud**
13 0738126 B.C. LTD.;                      )         (Counts 72-93)
   360 NORTHWEST TELECOM, LLC;             )
14 D&D ASSOCIATES LLC;                     )         **18 U.S.C. §§**
   LLS AMERICA, LLC (a Nevada limited      )         **1956(a)(2)(A) and 2,**
15 liability company);                     )         **International Money**
   LLS AMERICA, LLC (a Utah limited        )         **Laundering**
16 liability company);                     )         (Counts 94-110)
   LLS CANADA, LLC (a Nevada limited       )
17 liability company);                     )         **Notice of Forfeiture**
   LLS CANADA, LLC (a Utah limited         )         **Allegations**
18 liability company); and                 )
   TEAM SPIRIT AMERICA, LLC,               )
19                                         )
             Defendants.                   )
20

The Grand Jury Charges:
21
        That at all times material to the Indictment, except as otherwise noted:
22
**The Defendant Doris E. Nelson**
23
        1.     Defendant, DORIS E. NELSON, owned and operated a payday/short-
24
term loan business in Spokane County, in the Eastern District of Washington.
25
Defendant NELSON used numerous different business entities (including the
26
above named entity defendants referred to collectively, where appropriate, as "the
27
Corporate Defendants") in relation to her payday/short-term lending business.
28

INDICTMENT - 1
P11025lc.JBA.wpd

1  Defendant NELSON commonly conducted her payday/short-term lending business
2  under the name The Little Loan Shoppe.

3      2.    Defendant NELSON began her payday/short-term loan business in
4  British Columbia in or about 1997 and moved to Spokane County in or about
5  2001.  In or about 2003, Defendant NELSON was conducting her payday/short-
6  term lending business on the internet, closing all physical stores once accessed by
7  her payday/short-term lending customers.

8      3.    As described more fully herein, Defendant NELSON and the
9  Corporate Defendants utilized the payday/short-term loan business operations in a
10  Ponzi Scheme that took in at least $126,000,000 (one hundred twenty-six million
11  dollars) from at least 800 (eight hundred) investors worldwide.  As a result of that
12  scheme, Defendant NELSON and the Corporate Defendants caused the losses to
13  investors of over $40,000,000 (forty million dollars).

14      4.    A Ponzi Scheme is a fraudulent investment operation that pays
15  returns to investors from their own money or money paid by other investors, rather
16  than from any actual profit earned. A Ponzi Scheme works when the investors are
17  falsely led to believe that the returns on their investments, commonly referred to as
18  lulling payments, are from actual profits earned from a business operation rather
19  than from their own money or money paid by other investors.  The perpetuation of
20  investment returns from a Ponzi Scheme requires an ever-increasing flow of
21  money from investors.

22  **The Corporate Defendants**

23      5.    The Corporate Defendants, more fully described below, are all
24  business entities utilized by Defendant NELSON in perpetrating the below
25  described scheme.

26      6.    0738106 B.C. LTD., was formed in British Columbia, Canada on or
27  about October 19, 2005.  At all times material to the Indictment, Defendant
28  NELSON was the director of 0738106 B.C. LTD.

INDICTMENT - 2
P11025lc.JBA.wpd

7.    0738116 B.C. LTD., was formed in British Columbia, Canada on or about October 19, 2005.  At all times material to the Indictment, Defendant NELSON was the director of 0738116 B.C. LTD.

8.    0738126 B.C. LTD, was formed in British Columbia, Canada on or about October 19, 2005.  At all times material to the Indictment, Defendant NELSON was the director of 0738126 B.C. LTD.

9.    360 NORTHWEST TELECOM, LLC, was formed on or about January 29, 2008, in the state of Washington.  At all times material to the Indictment, Defendant NELSON's husband, Dennis L. Nelson Jr., was the manager of 360 NORTHWEST TELECOM, LLC.  At all times material to the Indictment, Defendant NELSON exercised control over 360 NORTHWEST TELECOM, LLC.

10.    D&D ASSOCIATES LLC, was formed on or about August 1, 2006, in the state of Nevada. At all times material to the Indictment, Defendant NELSON's husband, Dennis L. Nelson Jr., was the manager of D&D ASSOCIATES, LLC.  At all times material to the Indictment, Defendant NELSON exercised control over D&D ASSOCIATES LLC.

11.    LLS AMERICA, LLC (a Nevada limited liability company), was formed on or about November 3, 2005, in the state of Nevada.  At all times material to the Indictment, Defendant NELSON was the manager of LLS AMERICA, LLC (a Nevada limited liability company).

12.    LLS AMERICA, LLC (a Utah limited liability company), was formed on or about November 25, 2008, in the state of Utah.  At all times material to the Indictment, Defendant NELSON exercised control over LLS AMERICA, LLC (a Utah limited liability company).

13.    LLS CANADA, LLC (a Nevada limited liability company), was formed on or about October 23, 2006, in the state of Nevada.  At all times material to the Indictment, Defendant NELSON was the manager of LLS CANADA, LLC

INDICTMENT - 3
P11025lc.JBA.wpd

1  (a Nevada limited liability company).

2      14.    LLS CANADA, LLC (a Utah limited liability company), was formed

3  on or about November 3, 2006, in the state of Utah.  At all times material to the

4  Indictment, Defendant NELSON exercised control over LLS CANADA LLC (a

5  Utah limited liability company).

6      15.    TEAM SPIRIT AMERICA, LLC, (herein "TSA") was formed on or

7  about May 19, 2006, in the state of Washington.  TSA is a business entity that

8  operated Defendant NELSON's payday/short-term lending business, under the

9  name of the Little Loan Shoppe.  At all times material to the Indictment,

10  Defendant NELSON exercised control over TSA.

11  **Additional Entities**

12      16.    In addition to the Corporate Defendants, Defendant NELSON utilized

13  the following business entities among others, which are no longer active, to

14  perpetrate the below described scheme:

15      17.    Global Edge Marketing, LLC, (herein "GEM"), was formed on or

16  about March 28, 2008, in the state of Washington.   At all times material to the

17  Indictment, Defendant NELSON's husband, Dennis L. Nelson Jr., was the

18  manager of GEM.  Defendant NELSON formed GEM, or caused GEM to be

19  formed, to develop payday/short term loan customer leads for which her

20  payday/short-term lending businesses would pay using investor funds without the

21  knowledge of investors.  At all times material to the Indictment, Defendant

22  NELSON exercised control over GEM.  Specifically, on or about May 21, 2008

23  two business accounts (account numbers ending in 4155 and 4163) were opened at

24  Wells Fargo Bank in the name of GEM.  Both accounts were designated as "client

25  relationship accounts" of LLS AMERICA, LLC (a Nevada limited liability

26  company). Defendant NELSON was an authorized signatory on both Wells Fargo

27  GEM checking accounts.  At all times material to the Indictment, Defendant

28  NELSON utilized both GEM Wells Fargo checking accounts in her  payday/short-

INDICTMENT - 4

P11025lc.JBA.wpd

1   term loan business.

2        18.    D&C Lead Marketing LLC, was formed on or about May 3, 2007, in

3   the state of Nevada.  At all times material to the Indictment, Defendant NELSON's

4   husband, Dennis L. Nelson Jr., was the manager of  D&C.  At all times material to

5   the Indictment, Defendant NELSON exercised control over D&C.  Specifically,

6   D&C opened a checking account with Wells Fargo Bank, account number ending

7   9478, on which Defendant NELSON was a signatory and was designated as

8   "client relationship accounts" of LLS AMERICA, LLC (a Nevada limited liability

9   company).

10       19.    Atlantic LLS LLC (Nevada), was formed on or about May 7, 2008, in

11  the state of Nevada.  At all times material to the Indictment, Defendant NELSON

12  was the manager of Atlantic LLS LLC (Nevada).  Atlantic LLS LLC (Nevada) was

13  listed, along with certain Corporate Defendants as detailed below, on multiple

14  "promissory notes" to investors, including some of the named victim investors.

15       20.    Little Loan Shoppe America LLC (Washington), was formed on or

16  about May 18, 2001, in the state of Washington.  At all times material to the

17  Indictment, Defendant NELSON was the manager of Little Loan Shoppe America

18  LLC (Washington). Little Loan Shoppe America LLC (Washington) was listed,

19  along with certain Corporate Defendants as detailed below, on multiple

20  "promissory notes" to investors, including some of the named victim investors.

21       21.    Little Loan Shoppe Canada LLC (Nevada), was formed on or about

22  January 13, 2005, in the state of Nevada.  At all times material to the Indictment,

23  Defendant NELSON was the manager of Little Loan Shoppe Canada.  Little Loan

24  Shoppe Canada was listed, along with certain Corporate Defendants as detailed

25  below, on multiple "promissory notes" to investors, including some of the named

26  victim investors.

27       22.    LLS-NW LLC (Nevada), was formed on or about August 15, 2008, in

28  the state of Nevada.  At all times material to the Indictment, Defendant NELSON

INDICTMENT - 5

P110251c.JBA.wpd

1  was the manager of LLS-NW LLC (Nevada).  LLS-NW LLC (Nevada) was listed,

2  along with certain Corporate Defendants as detailed below, on multiple

3  "promissory notes" to investors, including some of the named victim investors.

4  **The Victim Investors**

5       23.    As described more fully below, Defendant NELSON and the

6  Corporate Defendants, with intent to defraud, made materially false and fraudulent

7  representations and promises to at least 800 (eight hundred) investors worldwide

8  causing them to invest at least $126,000,000 (one hundred twenty-six million

9  dollars) with Defendant NELSON and the Corporate Defendants.  The victim

10  investors, identified herein by their initials and place of residence, include the

11  following individuals:

12       M.B., Colorado Springs, Colorado;

13       S.C., Port Coquitlam, British Columbia, Canada;

14       B.D., Sequim, Washington;

15       P. D., Petersburg, Ontario, Canada;

16       A.G., Dedham, Massachusetts;

17       M.G., Surrey, British Columbia, Canada;

18       J.K., Revelstoke, British Columbia, Canada;

19       P. M., Suquamish, Washington;

20       D.N., Grass Valley, California

21       M.N., Vernon, British Columbia, Canada;

22       B. N., Lynwood, Washington;

23       J.N., Sequim, Washington;

24       N.P., Salmon Arm, British Columbia, Canada;

25       M.P., Madrid, Spain;

26       L.R., Eaton, New Hampshire;

27       W.R., Winnipeg, Manitoba, Canada;

28       R.S., Thomaston, Maine;

INDICTMENT - 6
P11025lc.JBA.wpd

1    A.S., Flushing, Michigan; and

2    S.B., Dedham, Massachusetts.

3    **The Scheme and Artifice to Defraud: Ponzi Scheme**

4        24.    Beginning on a date unknown to the Grand Jury, but by in or about

5    May 2000, until in or about March 2009, Defendant NELSON and the Corporate

6    Defendants, devised and intended to devise a scheme and artifice to defraud and

7    for obtaining money by means of materially false and fraudulent pretenses,

8    representations, and promises. In execution of the scheme to defraud, Defendant

9    NELSON and the Corporate Defendants used the United States mails, commercial

10   interstate carriers, and wire transmissions in interstate and foreign commerce.

11       25.    Beginning around May 2000 and continuing through March 2009,

12   Defendant NELSON solicited investors by promising high yields on investor

13   funds which Defendant NELSON and the Corporate Defendants claimed would be

14   paid from the profits of the payday/short-term lending business operations.

15   Defendant NELSON and the Corporate Defendants did not disclose to investors

16   that the payday/short-term lending business operations were not profitable to the

17   extent of the promised returns, nor did they disclose that investors would receive

18   payments on their investments from the money deposited by other investors.

19   **Manner and Means of the Scheme and Artifice to Defraud**

20       26.    Beginning around May 2000 and continuing through March 2009,

21   Defendant NELSON and the Corporate Defendants, with intent to defraud, falsely

22   and fraudulently promised investors that the profits from the payday/short-term

23   lending business activities were such that Defendant NELSON and the Corporate

24   Defendants could consistently and routinely pay their investors 40 percent to 60

25   percent interest per annum on their investments, when in truth and in fact

26   Defendant NELSON and the Corporate Defendants knew full well that the

27   payday/short-term lending business activities were not generating profits sufficient

28

INDICTMENT - 7

P11025lc.JBA.wpd

1   to pay the interest as promised.

2         27.    It was part of the scheme and artifice to defraud that Defendant

3   NELSON and the Corporate Defendants transmitted, and caused to be transmitted,

4   writings, signs, signals, and pictures by means of wire and radio in interstate and

5   foreign commerce for the purpose of executing the scheme and artifice to defraud,

6   in that Defendant NELSON and the Corporate Defendants used e-mail, telephone

7   calls, facsimile transmissions, and wire transfers of funds, and caused investors to

8   use email, telephone calls, facsimile transmissions, and wire transfers, to move

9   investor funds into the Ponzi Scheme, to provide lulling payments to investors,

10   and to communicate and perpetuate among the investors and potential additional

11   investors Defendant NELSON's scheme and artifice to defraud.

12         28.    It was further part of the scheme and artifice to defraud that

13   Defendant NELSON and the Corporate Defendants caused investors to place in a

14   post office or an authorized depository for mail matter, an item to be sent and

15   delivered according to the direction on the item by the U.S. Postal Service and by

16   commercial interstate carrier; and received an item that had been sent and

17   delivered through the U.S. Postal Service and a commercial interstate carrier; for

18   the purpose of executing the scheme and artifice to defraud in that Defendant

19   NELSON and the Corporate Defendants used the U.S. Postal Service and

20   commercial interstate carriers, and caused investors to use the U.S. Postal Service

21   and commercial interstate carriers to send investment funds to Defendant

22   NELSON and the Corporate Defendants.

23         29.    It was further part of the scheme and artifice to defraud that

24   Defendant NELSON and the Corporate Defendants issued what Defendant

25   NELSON called "promissory notes" to individuals who loaned or invested money

26   with Defendant NELSON and the Corporate Defendants for use in the

27   payday/short-term lending business.  These "promissory notes" detailed the

28

INDICTMENT - 8
P110251c.JBA.wpd

1  amounts, parties, and terms of the investments Defendant NELSON and the

2  Corporate Defendants received.  Through these "promissory notes," Defendant

3  NELSON and the Corporate Defendants obtained at least $126,000,000 (one

4  hundred twenty-six million dollars) from at least 800 (eight hundred) investors

5  worldwide, purportedly to fund additional payday/short-term loans and to expand

6  her business operations.

7      30.    In these "promissory notes," Defendant NELSON and the Corporate

8  Defendants typically promised investors annual returns of 40 percent to 60 percent

9  of their investment value.  These returns were often to be paid to investors via

10  post-dated interest checks, mailed to investors at the time of their investment,

11  which were to be negotiated on the check date.  Investors usually sent their

12  investment funds to Defendant NELSON and the Corporate Defendants by mail or

13  wire transfer.

14      31.    It was further a part of the scheme and artifice to defraud that

15  Defendant NELSON and the Corporate Defendants frequently deposited, or

16  caused to be deposited, the investor funds into one bank account located in the

17  United States and one or more bank accounts located in Canada.  These accounts

18  into which investor funds were deposited were frequently kept separate from the

19  bank accounts Defendant NELSON and the Corporate Defendants used to conduct

20  the payday/short-term lending business operations. As such, the money generated

21  from the payday/short-term lending business was rarely deposited into the investor

22  accounts and the money generated from the payday/short-term lending business

23  was not used to pay investor returns.

24      32.    It was further a part of the scheme and artifice to defraud that

25  Defendant NELSON communicated with the investors in person, by telephone, by

26  email, through the U.S. Postal Service, and through interstate commercial carrier

27  and solicited investors who resided all over the United States, and in international

28  locations including Canada, Mexico, and Spain.  Many of the investors learned

INDICTMENT - 9
P110251c.JBA.wpd

1    about the investment opportunity from friends or family members that had

2    previously invested and had themselves received exorbitant lulling payments.

3    Defendant NELSON claimed to the investors that the payday/short-term lending

4    business generated huge profits and that these profits would be used to pay

5    investors the exorbitant returns.  In reality, Defendant NELSON and the Corporate

6    Defendants used the vast majority of investor funds to make lulling payments to

7    earlier investors and to enrich Defendant NELSON.

8         33.    It was further a part of the scheme and artifice to defraud that

9    Defendant NELSON made several materially false statements and representations

10    to investors, which Defendant NELSON well knew were false, including, but not

11    limited to, the following: (a) her payday/short-term lending business continued to

12    grow and was financially sound; (b) investments in her company were more secure

13    than a bank; (c) the investment was safe and risk-free; (d) investors could retrieve

14    their investments within a short time period if needed; (e) the invested funds were

15    completely collateralized by payday/short-term loans to customers; and (f) her

16    payday lending business was recession-proof.  During the time that Defendant

17    NELSON was making these materially false and fraudulent statements and

18    representations to investors, the payday/short-term lending business operations

19    upon which her statements and representations to investors were based were in

20    fact not generating the profits she claimed.

21         34.    It was further a part of the scheme and artifice to defraud that

22    Defendant NELSON would conceal the scheme and artifice to defraud from

23    governmental regulators and investigators.  For instance, in July of 2001,

24    Defendant NELSON provided knowingly false information to investigators with

25    the Manitoba Securities Commission when she told them that she had fewer

26    investors in Manitoba Canada than she in fact did.  In addition, in August of 2008,

27    Defendant NELSON told various investors to provide materially false information

28    and to withhold material information from investigators with the British Columbia

INDICTMENT - 10

P11025lc.JBA.wpd

1  Securities Commission (BCSC).

2       35.    It was further a part of the scheme and artifice to defraud that

3  Defendant NELSON and the Corporate Defendants would, in addition to the

4  lulling payments, pay commissions to investors who successfully solicited funds

5  from additional investors.  For example, between 2005 and 2008, Defendant

6  NELSON and the Corporate Defendants paid at least $2,049,002 (two million,

7  forty nine thousand and two dollars) to four investors who successfully solicited

8  funds from additional investors.

9       36.    It was further a part of the scheme and artifice to defraud that

10  Defendant NELSON would use investor funds directly to enrich herself and

11  promote an unwarranted and unearned extravagant lifestyle.  For instance between

12  2003 and 2009, Defendant NELSON and the Corporate Defendants transferred at

13  least CAD 416,646 (four hundred and sixteen thousand, six hundred and forty six

14  Canadian dollars) and $3,889,637 (three million eight hundred and eighty nine

15  thousand six hundred and thirty seven dollars) to Defendant NELSON personally.

16       37.    In addition, Defendant NELSON and her family members charged at

17  least $374,000 (three hundred seventy four thousand dollars) in personal charges

18  to company credit cards of the Corporate Defendant, TSA, between 2007 and

19  2009.

20       38.    Further, Defendant NELSON used investor funds to promote her

21  extravagant lifestyle by purchasing luxury items for herself and her family

22  members including, but not limited to:

23       - a 2007 Southwind 35 foot Class A Motor home for $126,940.78 with a

24  down payment of $50,000 made on or about January 20, 2007;

25       - a 2008 Chevrolet Corvette for $61,225.88 purchased on or about March

26  15, 2008; and

27       - a 2008 Mercedes Benz S550 for $111,977.88, purchased on or about

28  November 9, 2008.

INDICTMENT - 11

39.     Defendant NELSON also used investor funds to make extravagant purchases of personal items, primarily apparel.  For instance, between October of 2004 and June of 2009, Defendant NELSON spent over $220,000 of investor funds on clothing at St. Johns Knits stores located in Las Vegas, Nevada; New York, New York; Honolulu, Hawaii; and Beverly Hills, California.  By way of further example, between March 2004 and June 2009, Defendant NELSON spent over $217,000 in investor funds making primarily clothing purchases from Nordstrom.

40.     In addition to the personal purchases, Defendant NELSON also used investor funds to gamble at various casinos.  For instance, between 2005 and 2008, Defendant NELSON lost over $400,000 of investor funds gambling at MGM Grand Casinos in Las Vegas, Nevada, including the Mirage, New York New York, Monte Carlo, Luxor, and Bellagio casinos.

41.     Defendant NELSON also used investor funds to take extravagant vacations.  For instance in November of 2006, Defendant NELSON, along with her husband, spent $28,984.64 on a Royal Caribbean cruise which included $23,500.00 in gambling charges.  On that vacation Defendant NELSON also purchased $58,457.50 of art from Park West at Sea.

42.     It was further a part of the scheme and artifice to defraud that in or about October 2008, as investor funds solicited during the scheme became depleted, Defendant NELSON and the Corporate Defendants stopped making the payments they had promised to their investors under the terms of their "promissory notes."  Initially Defendant NELSON offered some investors a reduced interest rate payment of 10 percent.  Over time, Defendant NELSON and the Corporate Defendants failed to make even the 10 percent payments, and all payments ceased in or around March of 2009.  By July of 2009, two of Defendant NELSON's entities engaged in the payday/short-term lending business activities, Corporate Defendant LLS AMERICA, LLC (a Nevada limited liability company)and LLS-A

INDICTMENT - 12
P11025lc.JBA.wpd

1 │ LLC, were in bankruptcy.

2 │     43.    It was further a part of the scheme and artifice to defraud that some

3 │ investors, including named investors B.D., A.G., and P.M. took out loans for

4 │ money to invest, using their homes and personal assets as collateral and

5 │ consequently lost not only their investments, but the collateral for their loans to

6 │ make the investments including their homes, life savings, and retirement savings.

7 │ **Specific Acts**

8 │     44.    In furtherance of Defendant NELSON's scheme and artifice to

9 │ defraud and to effect its objects, Defendant NELSON and the Corporate

10 │ Defendants committed certain specific acts in the Eastern District of Washington

11 │ and elsewhere, to wit: the acts described in Counts 1 through 110 of the

12 │ Indictment, the acts referenced above in the Manner and Means, and the following

13 │ additional acts.

14 │     45.    <u>On or between January 26, 2007 and November 2, 2008</u>: Defendant

15 │ Nelson and named Corporate Defendants and other entities issued promissory

16 │ notes to named investors as follows:

| Corporate Defendant/Other Entity | Promissory Note Issued to: |
|---|---|
| 0738106 BC Ltd | W.R. |
| 0738116 BC Ltd | M.G., M.N. |
| 0738126 BC Ltd | M.B., S.B., A.G., P.M., N.P., M.P., L.R., W.R. |
| Atlantic LLS LLC (Nevada) | B.D. |
| Little Loan Shoppe America LLC (Washington) | J.N. |
| Little Loan Shoppe Canada LLC (Nevada) | M.B., S.B., A.G., P.M., M.P., L.R., |
| LLS America, LLC (Nevada) | P.D., A.G., D.N., J.N., M.P., L.R., A.S. |

INDICTMENT - 13
P11025lc.JBA.wpd

| LLS-A LLC (Washington) | M.B., S.B., S.C., A.G., P.M., J.N., L.R., R.S., J.N. |
|---|---|
| LLS_NW LLC (Washington) | J.N. |

46.     <u>On or between December 15, 2006, and January 17, 2007</u>:  Defendant
NELSON emailed more than ten investors, stating that "[a]t this time there is no
need for additional funds.  I am sorry that we were unable to accommodate several
who had wanted to put more in but who were unable to liquidate before the
deadline.  We currently have plenty of cash on hand but will keep everyone posted
if another opportunity develops in the future."  In that email, Defendant NELSON
also explained that "Little Loan Shoppe recently bought the building we were
renting in Spokane, Washington.  We are currently in the middle of an extensive
remodeling project."  Defendant NELSON made these materially false and
fraudulent representations and promises when, in truth and in fact, Defendant
NELSON well knew that the building referred to had not been purchased by her
payday/short-term lending businesses, her payday/short-term lending businesses
were paying rent to a company owned by her husband and that her payday/short-
term lending operations were unprofitable. Named victim investor W.R. of
Winnipeg, Manitoba, Canada was one of the recipients of this email.

47.     <u>On or about July 24, 2007</u>: Defendant NELSON entered into a "Ten
Year Promissory Note" with named victim investor M.B. wherein she guaranteed
50 percent annual interest on M.B.'s loan and promised to use the loaned funds,
$500,000 (five hundred thousand dollars) solely to operate her payday/short-term
lending business.  Defendant NELSON made these materially false and fraudulent
pretenses, representations, and promises when in truth and in fact, Defendant
NELSON well knew that the money from M.B. would not be used to operate her
payday/short-term lending business but instead would be used to make lulling
payments to investors. Defendant NELSON also made these materially false and

INDICTMENT - 14
P11025lc.JBA.wpd

1  fraudulent representations and promises to M.B. knowing that her payday/short-

2  term lending business was not profitable and would not be capable of making the

3  promised 50 percent annual interest payments.  Based on these false and

4  fraudulent representations and promises, M.B. transferred $500,000 (five hundred

5  thousand dollars) on July 24, 2007, by wire to a bank account controlled by

6  Defendant NELSON, as alleged in Count 3 below.

7       48.   On or about December 24, 2007: Defendant NELSON telephoned

8  named victim investor A.G. and solicited additional investment funds by falsely

9  and fraudulently representing that her payday/short-term lending business was

10  doing well.  Defendant NELSON made these materially false and fraudulent

11  representations and promises when in truth and in fact, Defendant NELSON well

12  knew that her payday/short-term lending business was unprofitable.  Based on

13  these false and fraudulent representations, and promises A.G. mailed checks

14  totaling $500,000 (five hundred thousand dollars) on December 24, 2007, to

15  Defendant NELSON, as alleged in Count 77 below.

16       49.   On or about February 12, 2008: Defendant NELSON telephoned

17  named victim investor W.R. and solicited additional investment funds by making

18  false and fraudulent representations and promises including, that she would

19  supplement any promissory note with W.R. with a personal guarantee for

20  collateral, that one of her payday/short-term lending business entities owned the

21  building in Spokane, Washington out of which her businesses operated, and that

22  her payday/short-term lending business did $50,000 (fifty thousand dollars) of

23  volume on its lowest day.  Defendant NELSON made these materially false and

24  fraudulent representations and promises when in truth and in fact, Defendant

25  NELSON well knew that the payday/short-term lending businesses did not own

26  the building they operated out of in Spokane, Washington but instead paid rent to

27  a company owned by her husband, Dennis Nelson, and the payday/short-term

28  lending business was unprofitable.

INDICTMENT - 15

P11025lc.JBA.wpd

1    50.   <u>On or about February 26, 2008</u>.  In an email to investors, Defendant

2  NELSON reported that "last year we experienced substantial growth during an

3  otherwise declining economy.  In short, we defied financial gravity.  We continue

4  to forecast . . . an explosion of profit."   Defendant NELSON also announced the

5  creation of another company named D&C Lead Marketing ("D&C"), declaring:

6             I have taken a bold step forward by converting what used

7             to be a massive expense into pure profit.  As you are

8             aware, The Little Loan Shoppe used to purchase leads at

9             a rate of up to sixty-five dollars each.  With the creation

10            of D&C Lead Marketing, we have turned the financial

11            tables, by creating a commercial lead company to

12            generate our own leads. . . [which] allows us to secure

13            top tier leads for ourselves, and then sell the remaining

14            leads at a substantial projected profit.

15 This email was sent to more than 25 investors including the following named

16 victim investors: P.D., A.G., M.G., P.M., D.N., J.N., L.R., W.R., and R.S..

17 Defendant NELSON made these materially false and fraudulent representations

18 and promises when in truth and in fact, Defendant NELSON knew that her

19 payday/short-term lending business was unprofitable, did not experience

20 substantial growth, and did not forecast "an explosion of profit."  Moreover,

21 Defendant NELSON well knew that the creation of D&C Lead Marketing, later

22 GEM, would not save her payday/short-term lending businesses any expenses.

23    51.   <u>On or about March 11, 2008</u>.  In an email to investors, Defendant

24 NELSON stated that:

25             [d]ue to recent growth as well as the advent of the newly

26             created lead generating company D&C Lead Marketing

27             we are as busy as ever!  This substantial growth means

28             that we are ready to review all possible means of

INDICTMENT - 16
P11025lc.JBA.wpd

1        financial contribution.  If you are interested in making

2        any additional financial contributions please feel free to

3        contact me.

4 This email was sent to more than 25 investors including the following named

5 victim investors: P.D., M.G., P.M., D.N., J.N., and R.S.  Defendant NELSON

6 made these materially false and fraudulent representations and promises when in

7 truth and in fact Defendant NELSON knew that there was no growth in her

8 payday/short-term lending business.

9       52.    <u>On or about March 12, 2008</u>.   In a message to investors posted on her

10 website, Defendant NELSON described the formation of four new companies:

11 D&C Lead Marketing; Corporate Defendant 360 NORTHWEST TELECOM,

12 LLC, (purportedly selling telecommunications products); an unnamed collections

13 company; and an unnamed computer programming and software company.

14 Defendant NELSON had sent an email eight days earlier to more than 25

15 investors, including named victim investors P.D., A.G., M.G., J.N., D.N., P.M., W.

16 R., L.R., and R.S., explaining how to access her website.  Referring to these new

17 companies, Defendant NELSON stated that "I have not bitten off more than I can

18 chew.  These companies were created to support the Little Loan Shoppe however

19 they are all independent entities capable of standing alone without assistance from

20 the Little Loan Shoppe." This posting was viewed by investors.  Defendant

21 NELSON made these materially false and fraudulent representations and promises

22 when in truth and in fact, Defendant NELSON well knew that the new companies

23 were not capable of operations independent of her payday/short-term lending

24 business and the investor funds.

25       53.    <u>On or between May 2, 2008, and May 7, 2008</u>: Defendant NELSON

26 entered into a "Two Year Promissory Note" with named victim investor M.B.

27 wherein she guaranteed 50 percent annual interest, interest-only payments,

28 repayment of the principle on May 2, 2010, and promised to use the $720,000

INDICTMENT - 17

P11025lc.JBA.wpd

1  (seven hundred twenty thousand dollars) in loaned funds solely to operate her

2  payday/short-term lending business.  Defendant NELSON made these materially

3  false and fraudulent representations and promises when, in truth and in fact,

4  Defendant NELSON knew that the money from M.B. would not be used to operate

5  the payday/short-term lending business but instead to perpetuate her Ponzi scheme

6  by making lulling payments to investors and to personally enrich herself and

7  members of her family. Defendant NELSON also knew that she could not pay 50

8  percent annual interest to M.B., nor pay back the principle by May 2, 2010 as

9  promised from her unprofitable payday/short-term lending business.  Based on

10  Defendant NELSON's materially false and fraudulent representations and

11  promises M.B. transferred $120,000 (one hundred twenty thousand dollars) by

12  wire on May 5, 2008, to a bank account controlled by Defendant NELSON, as

13  alleged in Count 8 below.

14          54.    On or about May 6, 2008: Defendant NELSON emailed investors,

15  informing them of a new business venture named Global Edge Marketing

16  ("GEM") a lead-generating company, which she claimed would result in:

17                   Little Loan Shoppe [being] able to generate its own

18                   organic leads in-house and in turn significantly increase

19                   the amount of loans that Little Loan Shoppe funds per

20                   day.  Furthermore, through Global Edge, we will be able

21                   to sell our remaining surplus leads off at a premium to

22                   other online markets.

23  Defendant NELSON also noted a slowing U.S. economy and possible recession

24  and told investors "I wanted to take some time to reassure you that our industry is

25  thriving." She claimed that the economic situation actually benefitted her

26  payday/short-term lending business by increasing loans to higher income

27  customers.  She predicted that "Little Loan Shoppe will continue to watch the

28  economy as well as our consumer data to assure that we thrive through any

INDICTMENT - 18

P11025lc.JBA.wpd

1 changes in market conditions."  In the same email, Defendant NELSON indicated

2 to investors that:

3        I am very excited about the upcoming explosion in

4        growth for the Little Loan Shoppe.  That being said I

5        have recently been contacted by others who are

6        interested in investment opportunities with us due to our

7        increase in growth.  So I have decided for a short period

8        that I will be excepting [sic] new investments.

9 This email was received by more than 10 investors including named victim

10 investor P.M..  Defendant NELSON made these materially false and fraudulent

11 representations and promises when in truth and in fact, Defendant NELSON knew

12 that GEM, a company owned by Defendant NELSON's husband and son, was not

13 generating leads "in house" but rather Defendant NELSON's payday/short-term

14 lending business was paying GEM for the leads. Further, Defendant NELSON

15 knew that, regardless of the U.S. economic situation, her payday/short-term

16 lending business was unprofitable.

17        55.  <u>On or about May 7, 2008</u>: Defendant NELSON emailed investors

18 announcing a "window to invest," explaining that the opportunity "is due to the

19 anticipated increase in volume of loans due to the launch of Global Edge

20 Marketing."  She continued, "I cannot determine when this opportunity for both

21 new and existing investors will end . . . this window of opportunity will probably

22 not be open again due to the expected surplus of income from Global Edge

23 Marketing."  Defendant NELSON also encouraged investors to reinvest their

24 interest payments into additional investments with Defendant NELSON and

25 concluded by encouraging investors to contact her by email or telephone with any

26 questions.  This email was received by more than 10 investors including named

27 victim investors D.N., P.M. and R.S..  Defendant NELSON made these materially

28 false and fraudulent representations, and promises when in truth and in fact,

INDICTMENT - 19
P11025lc.JBA.wpd

1  Defendant NELSON well knew that there was no expected surplus of income from

2  GEM as her payday/short-term lending business was paying GEM for the leads,

3  and her payday/short-term lending business continued to be unprofitable.

4      56.    On or about May 23, 2008:  Defendant NELSON emailed investors

5  stating that "[t]he creation of Global Edge Marketing is solely to give the Little

6  Loan Shoppe all of its support and to help cut the marketing costs and increase the

7  quality and amount of customer[s] that Little Loan Shoppe accepts per day.  That

8  being said, the Little Loan Shoppe is currently looking for investments to help

9  with this huge increase in consumer growth from Global Edge Marketing.  If you

10  or anyone that you know is interested in this investments opportunity please

11  contact me." This email was received by more than 25 investors including named

12  victim investors D.N., W.R. and R.S..  Defendant NELSON made these materially

13  false and fraudulent representations, and promises when in truth and in fact,

14  Defendant NELSON well knew that GEM was charging the Little Loan Shoppe

15  increased  fees for leads and thus was not supporting Defendant NELSON's

16  payday/short-term lending business and her payday/short-term lending business

17  continued to be unprofitable.

18      57.    On or about May 29, 2008: Defendant NELSON telephoned named

19  victim investor A.G. and solicited additional investment funds by falsely and

20  fraudulently representing that the investment was sound based on Little Loan

21  Shoppe's ongoing profitability and growth and assurances to A.G. that the

22  investment was safe.  Defendant NELSON made these materially false and

23  fraudulent representations and promises when in truth and in fact, Defendant

24  NELSON well knew that the payday/short-term lending business upon which the

25  investment was backed, continued to be unprofitable.  Based on these false and

26  fraudulent pretenses, representations, and promises Investor A.G. transferred

27  $500,000 (five hundred thousand dollars) by wire to an account controlled by

28  Defendant NELSON on May 29, 2008, as alleged in Count 29 below.

INDICTMENT - 20
P11025lc.JBA.wpd

58.    <u>On or about June 17, 2008</u>: Defendant NELSON telephoned named victim investor W.R. and solicited additional investment funds by falsely and fraudulently representing that the investment was sound based on Little Loan Shoppe's ongoing profitability and growth and assurances to W.R. that the investment was safe.  Defendant NELSON made these materially false and fraudulent representations and promises when in truth and in fact, Defendant NELSON well knew that the payday/short-term lending business upon which the investment was backed continued to be unprofitable.  Further, based on these materially false and fraudulent representations and promises W.R. transferred an additional CAD $400,000 (four hundred fifty thousand Canadian dollars) by wire to an account controlled by Defendant NELSON on June 19, 2008, as alleged in Count 64 below.

59.    <u>On or between June 26, 2008 and July 24, 2008</u>: In a series of substantially similar letters and emails, Defendant NELSON described a "new massive marketing campaign" that she claimed would result in a large number of new customers and related payday/short-term loans.  Defendant NELSON then advised that "[t]his increased number of loans will change us from a medium-sized loan company to one of the largest loan companies."  These letters and emails were received by investors including named victim investors: P.M., D.N., M.N., W.R., J.N., S.C., A.G., M.P., S.B., L.W., and A.S.

60.    <u>On or between June 27, 2008 and August 24, 2008</u>: Defendant NELSON received additional investments from more than 75 investors totaling CAD 2,890,002 (two million, eight hundred and ninety thousand and two Canadian dollars) and $5,283,372 (five million, two hundred and eighty three thousand three hundred and seventy two dollars).  These investors included named victim investors: S.C., A.G., J.N., M.P., L.R., and A.S.

61.    <u>On or between October 3, 2008</u>:  In a meeting with BCSC investigators, Defendant NELSON stated that she did not use funds from newer

INDICTMENT - 21
P11025lc.JBA.wpd

1   investors to make interest payments to older investors, claiming instead that

2   interest payments were funded by payday/short-term lending profits.   Defendant

3   NELSON also declared that all funds raised from investors were used to fund

4   payday/short-term loans.  Defendant NELSON made these materially false and

5   fraudulent representations when in truth and in fact, Defendant NELSON well

6   knew that she did use funds from investors to make interest payments to older

7   investors and that funds raised from investors were not used to fund payday/short-

8   term loans.

9       62.   On or about October 7, 2008:  BCSC directed Defendant NELSON to

10  refrain from distributing further promissory notes or other securities.

11      63.   On or about October 7, 2008:  In an email to investors, Defendant

12  NELSON claimed that changes to U.S. lending laws had "dramatically reduced

13  our profits . . . . As a result . . . we are not making the profits which previously

14  allowed us to pay generous interest rates to our supporters. . . . We take our

15  commitments and financial responsibilities very serious [sic] and assure you that

16  your funds are not being used for anything inappropriate or for any unrelated

17  ventures."  Defendant NELSON made these materially false and fraudulent

18  representations when in truth and in fact, Defendant NELSON well knew that her

19  payday/short-term loan operations had not made profits allowing for payments to

20  investors.  Defendant NELSON announced that in the future, investors' interest

21  payments would be limited to 10% annual interest, despite the amounts promised

22  in their "promissory notes."  She also instructed investors to return all post-dated

23  interest checks to be replaced by checks calculated at the lower interest rate.

24      64.   On or about October 21, 2008: In an email to investors, Defendant

25  NELSON reiterated that investor payments would be limited to 10% annual

26  interest on all outstanding notes.  She stated that "once we return to a stable and

27  positive financial situation we will endeavor to return to the previous payments."

28  Defendant NELSON also stated that "[a] small number of our supporters have

INDICTMENT - 22
P11025lc.JBA.wpd

1   asked about the possibility of entering into early buyouts.  At this point, we are not

2   able to support these requests."

3        65.   <u>On or about December 30, 2008</u>: In an email to investors, Defendant

4   NELSON asserted that:

> 5   I want to assure you that I am doing everything possible
>
> 6   to keep your principal safe. . . . Little Loan Shoppe does
>
> 7   not require any additional capital to meet the obligations
>
> 8   of producing more loans.  We are creating loans from our
>
> 9   own revenue.  We are making a profit each month which
>
> 10   is going back out into new loans and covering our
>
> 11   expenses.  Also with the revenue that is being generated
>
> 12   the company has been making payments to investors.  As
>
> 13   well as paying all bills and funding new loans.  This
>
> 14   demonstrates the long term viability of the company
>
> 15   from an operational and financial standpoint. . . . I am
>
> 16   aware that you are concerned but I want you all to be
>
> 17   assured that I myself and my staff are doing everything
>
> 18   to make this a very strong and profitable company.

19   Defendant NELSON made these materially false and fraudulent

20   representations and promises when in truth and in fact, Defendant

21   NELSON well knew that her payday/short-term loan operations were

22   not profitable, had not been profitable, and that investors were not

23   being paid from any profits or revenues of the payday/short-term loan

24   operations.

25        66.   <u>On or about February 9, 2009</u>:  In an email to investors, Defendant

26   NELSON told investors to stop contacting her and her staff with questions about

27   their investments.  Defendant NELSON stated that these numerous and constant

28   inquiries were a distraction to her and the business and that she "will no longer be

INDICTMENT - 23
P11025lc.JBA.wpd

1  directly available to investors."  Defendant NELSON also announced that investor

2  accounts would be reviewed during February and March 2009, and that "regular

3  payments will resume . . . if a payment is truly due."

4      67.  <u>On or about March 14, 2009</u>:  Defendant NELSON emailed investors

5  that the review of investor accounts was behind schedule with a new target date of

6  April 15, 2009.

7      68.  <u>In or about March 2009</u>:  Defendant NELSON and Chris Foster

8  traveled to Florida to meet with three investors in an attempt to obtain additional

9  funds from these investors.  These three investors did not invest additional funds,

10  but advised Defendant NELSON to step down as CEO and hire a professional

11  manager and CEO.

12      69.  <u>On or about March 31, 2009</u>:   In a letter to investors, repeated in an

13  April 10, 2009 email, investors were informed that Defendant NELSON stepped

14  down as Chief Executive Officer and was replaced by Chris Foster, Defendant

15  NELSON's son.  The letter, signed by Mr. Foster, announced a six-month

16  moratorium on all investor payments.  Mr. Foster claimed the moratorium was

17  necessary because the previous review of investor accounts showed

18  "unsubstantiated debts and overpayments," and that all investor accounts would be

19  audited by a third party accounting firm.  Mr. Foster stated that "[i]nvestors will

20  not initiate contact with staff during this period - including by email, telephone, or

21  person," and that only written communication would be accepted.  Mr. Foster

22  closed the letter by stating "[t]his is not to be construed as an attempt to avert

23  financial obligations.  However, it is critical that no further funds are paid to

24  accounts which have either been paid in full, or are based on unsubstantiated

25  debt."

26      70.  <u>On or between November 2006 through May 2007</u>: Defendant

27  NELSON, with the intent to promote her mail and wire fraud schemes described

28  herein, transferred money from and to named Corporate Defendant bank accounts

INDICTMENT - 24

P11025lc.JBA.wpd

1 | in the United States and Canada in order to keep money in the accounts for lulling

2 | payments to victim investors as set forth in detail in Counts 94-110.

**Wire Fraud**
**18 U.S.C. § 1343**
**(Counts 1-69)**

71.    Paragraphs 1 through 70 above are hereby re-alleged and incorporated into the counts charging Wire Fraud, in violation of 18 U.S.C. § 1343, as if fully set forth in each.

72.    On or about each of the dates set forth below, in Spokane, Washington, in the Eastern District of Washington and elsewhere, Defendant NELSON and the Corporate Defendants, for the purpose of executing the scheme described above, and attempting to do so, did knowingly and with intent to defraud, based on materially false and fraudulent representations, omissions, pretenses and promises, transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Investor | Date | Description |
|---|---|---|---|
| 1 | M. B. | 04/27/2007 | Wire transfer of $500,000 from Teambank in Paola, Kansas, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 2 | M. B. | 06/07/2007 | Wire transfer of $500,000.00 from Teambank in Paola, Kansas, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 3 | M. B. | 07/24/2007 | Wire transfer of $500,000.00 from Colorado National Bank in Colorado Springs, Colorado, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 4 | M. B. | 08/13/2007 | Fax transmission of a letter from Colorado Springs, Colorado, to DORIS E. NELSON in Spokane, Washington. |
| 5 | M. B. | 04/18/2008 | Wire transfer of $525,000.00 from Ent Federal Credit Union in Colorado Springs, Colorado, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) Spokane, Washington |

INDICTMENT - 25
P11025lc.JBA.wpd

| 6 | M. B. | 04/22/2008 | Wire transfer of $25,000.00 from Ent Federal Credit Union in Colorado Springs, Colorado, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 7 | M. B. | 04/22/2008 | Wire transfer of $50,000.00 from Rocky Mountain Bank and Trust in Florence, Colorado, through Bankers Bank of the West in Denver, Colorado, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 8 | M. B. | 05/05/2008 | Wire transfer of $120,000.00 from Colorado National Bank in Colorado Springs, Colorado, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 9 | S. B. | 04/25/2007 | Wire transfer of $600,000.00 from Hyde Park Bank in Hyde Park, Massachusetts, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 10 | S. B. | 08/15/2007 | Wire transfer of $700,000.00 from Hyde Park Co-operative Bank in Hyde Park, Massachusetts, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 11 | S. B. | 08/30/2007 | Wire transfer of $700,000.00 from Hyde Park Co-operative Bank in Hyde Park, Massachusetts, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 12 | S. B. | 06/26/2008 | Email from DORIS E. NELSON to SB soliciting new investments |
| 13 | S. C. | 07/11/2008 | Email to S.C. soliciting new investments |
| 14 | B. D. | 09/04/2008 | Wire transfer of $300,000 from Bank of America in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 15 | P. D. | 01/28/2008 | Wire transfer of $500,000.00 from BMO Nesbitt Burns brokerage account in Toronto, Canada, through Bank of New York Mellon in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 16 | P. D. | 02/26/2008 | Email from DORIS E. NELSON to P. D. soliciting new investments |
| 17 | P. D. | 03/11/2008 | Email from DORIS E. NELSON to P. D. soliciting new investments |

INDICTMENT - 26

P11025lc.JBA.wpd

| # | | Date | Description |
|---|---|---|---|
| 18 | P. D. | 03/27/2008 | Wire transfer of $500,000.00 from BMO Nesbitt Burns brokerage account in Toronto, Canada through Bank of New York Mellon Corp in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 19 | P. D. | 06/26/2008 | Email from DORIS E. NELSON to P. D. soliciting new investments |
| 20 | A. G. | 03/19/2007 | Wire transfer of $100,000.00 from Bank of America in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 21 | A. G. | 04/19/2007 | Wire transfer of $300,000.00 from Bank of America in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 22 | A. G. | 05/22/2007 | Wire transfer of $100,000 from Scottrade, Inc. in St. Louis, Missouri, through US Bank in St. Louis, Missouri to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 23 | A. G. | On or before 12/24/2007 | Telephone call from DORIS E. NELSON in Spokane, Washington, to A. G., located outside the state of Washington, soliciting new investment |
| 24 | A. G. | 02/26/2008 | Email from DORIS E. NELSON to A. G. soliciting new investments. |
| 25 | A. G. | On or before 12/27/2007 | Telephone call from DORIS E. NELSON in Spokane, Washington, to A. G., located outside the state of Washington, soliciting new investment |
| 26 | A. G. | 02/27/2008 | Wire transfer of $1,000,000.00 from Bank of America in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 27 | A. G. | 02/28/2008 | Email sent from A. G. to DORIS E. NELSON |
| 28 | A. G. | On or before 05/29/2008 | Telephone call from DORIS E. NELSON in Spokane, Washington, to A.G., located outside the state of Washington, soliciting new investment |
| 29 | A. G. | 05/29/2008 | Wire transfer of $500,000.00 from Bank of America in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 30 | A. G. | 06/26/2008 | Email from DORIS E. NELSON to A. G. soliciting new investments |

INDICTMENT - 27

P110251c.JBA.wpd

| 31 | A. G. | 07/03/2008 | Wire transfer of $1,000,000.00 from National Financial Services Corp in Boston, Massachusetts, through JP Morgan Chase Bank in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
|----|-------|------------|------|
| 32 | M. G. | 10/30/2007 | Wire transfer of $370,028.58 from The Toronto Dominion Bank in Toronto, Ontario, Canada, to Wells Fargo Bank in Spokane, Washington |
| 33 | M. G. | 02/26/2008 | Email from DORIS E. NELSON to M. G. soliciting new investments |
| 34 | M. G. | 06/26/2008 | Email from DORIS E. NELSON to M. G. soliciting new investment |
| 35 | J. K. | 09/23/2008 | Wire transfer of $198,019.80 from Revelstoke Credit Union in Revelstoke, British Columbia, Canada, through Credit Union Central of BC in Vancouver, Canada, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 36 | P. M. | 04/19/2007 | P. M. (Sound Investments Co) wire transfer of $50,000.00 from Charles Schwab & Co. Inc in San Francisco, California, through Citibank N.A. in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 37 | D.N. | 2/26/2008 | Email from DORIS E. NELSON to D.N. soliciting new investments |
| 38 | D. N. | 03/03/2008 | Email from DORIS E. NELSON to D. N. soliciting new investments |
| 39 | D. N. | 03/11/2008 | Email from DORIS E. NELSON to D. N. soliciting new investments |
| 40 | D. N. | 05/23/2008 | Email from DORIS E. NELSON to D. N. soliciting new investments |
| 41 | D. N. | 07/24/08 | Email from DORIS E. NELSON to D. N. soliciting new investments |
| 42 | M. N. | 11/02/2007 | Wire transfer of CAD 400,000 from Bank of Montreal in Toronto, Canada, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 43 | M. N. | 07/24/2008 | Email from DORIS E. NELSON to M. N. soliciting new investments |
| 44 | B. N. | 05/07/2008 | Wire transfer of $100,000 from Bank of America in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 45 | N. P. | 01/28/2008 | Email from Amanda Foster at The Little Loan Shoppe to N. P. with instructions related to her investment |
| 46 | N. P. | 05/19/2009 | Email from NP to DORIS E. NELSON regarding her $100,000 investment |

INDICTMENT - 28

P11025lc.JBA.wpd

| | | | |
|---|---|---|---|
| 47 | N. P. | 08/07/2009 | Email from N. P. to DORIS E. NELSON explaining the hardship the loss of her investment has caused |
| 48 | M. P. | 02/07/2008 | Wire transfer of $1,000,000 from Banco Santander in London, England, through Bank of New York Mellon Corporation in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 49 | M. P. | 03/03/2008 | Wire Transfer of $1,000,000 from Citibank N.A. in New York, New York, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 50 | M. P. | 06/26/2008 | Email from DORIS E. NELSON to M. P. soliciting new investments |
| 51 | M. P. | 07/09/2008 | Wire transfer of $1,000,000 from Banco Santander in London, England through Bank of New York Mellon Corporation in New York, New York to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 52 | L. R. | 07/03/2007 | Wire transfer of $250,000 from Citibank N.A. in New York, New York to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 53 | L. R. | 01/07/2008 | Wire transfer of $500,000 from The Boston Private Bank and Trust Co. in Boston, Massachusetts, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 54 | L. R. | 02/26/2008 | Email from DORIS E. NELSON to L. R. soliciting new investments |
| 55 | L. R. | 04/01/2008 | Wire transfer of $500,000 from The Boston Private Bank and Trust Co. in Boston, Massachusetts, to Wells Fargo Bank Account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 56 | L. R. | 04/01/2008 | Wire transfer of $500,000 from The Boston Private Bank and Trust Co. in Boston, Massachusetts, to Wells Fargo Bank Account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 57 | W. R. | 02/12/2008 | Telephone call from DORIS E. NELSON to W. R., located in Canada, soliciting additional investments |
| 58 | W. R. | 02/26/2008 | Email from DORIS E. NELSON to W. R. soliciting new investments |
| 59 | W. R. | 02/28/2008 | Email from W. R. to DORIS E. NELSON discussing additional investment |
| 60 | W. R. | 03/11/2008 | Telephone call between DORIS E. NELSON and W. R., located in Canada, discussing additional investment |

INDICTMENT - 29

P11025lc.JBA.wpd

| 61 | W. R. | 03/13/2008 | Email to W. R. transmitting a promissory note for his 03/12/2008 investment |
| 62 | W.R. | 6/03/2008 | Email to W.R. transmitting two "Payment Detail Summary" documents summarizing W.R.'s interest payments. |
| 63 | W. R. | 06/17/2008 | Email from W. R. to DORIS E. NELSON discussing additional investment |
| 64 | W. R. | 06/30/2008 | Email to W.R. transmitting a promissory note for his 6/20/2008 investment. |
| 65 | W. R. | 07/16/2008 | Email from DORIS E. NELSON to W. R. soliciting new investments |
| 66 | R. S. | 06/13/2007 | Wire transfer of $24,000 from Camden National Bank in Camden, Maine, to Bank of America in account Spokane, Washington |
| 67 | R. S. | 02/26/2008 | Email from DORIS E. NELSON to R. S. soliciting new investment |
| 68 | R. S. | 03/11/2008 | Email from DORIS E. NELSON to R. S. soliciting new investment |
| 69 | A. S. | 06/28/2007 | Wire transfer of $100,000 from Saginaw, Michigan, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 70 | A. S. | 04/09/2008 | Wire transfer of $400,000 from Saginaw, Michigan, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |
| 71 | A. S. | 07/10/2008 | Wire transfer of $350,000 from Saginaw, Michigan, to Wells Fargo Bank account XXX-XXX3582 (LLS America, LLC) in Spokane, Washington |

All in violation of Title 18 United States Code Section 1343.

**Mail Fraud**
**18 U.S.C. § 1341**
**(Counts 72-93)**

72.    Paragraphs 1 through 70 above are hereby re-alleged and incorporated into the counts charging Mail Fraud, in violation of 18 U.S.C. § 1341, as if fully set forth in each.

73.    On or about each of the dates set forth below, in Spokane, Washington, in the Eastern District of Washington and elsewhere, Defendant NELSON and the Corporate Defendants, for the purpose of executing the scheme and artifice to defraud as described above, and attempting to do so, did knowingly

INDICTMENT - 30
P11025lc.JBA.wpd

1    and with intent to defraud, based on materially false and fraudulent

2    representations, omissions, pretenses and promises, knowingly deposited and

3    caused to be deposited any matter or thing whatever to be sent and delivered by

4    mail and any private and commercial interstate carrier as follows:

| Count | Investor | Date | Description |
|-------|----------|------|-------------|
| 72 | S. B. | 06/11/2008 | Package sent via commercial interstate carrier from Dedham, Massachusetts, to Spokane, Washington |
| 73 | S. C. | 08/18/2008 | Package sent via the Postal Service or commercial interstate carrier from Spokane, Washington, to Port Coquitlam, British Columbia, Canada |
| 74 | B. D. | 09/10/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Sequim, Washington. |
| 75 | B. D. | 11/21/2008 | Package sent via the Postal Service or commercial interstate carrier from Sequim, Washington, to Spokane, Washington |
| 76 | P. D. | 02/01/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Petersburg, Ontario, Canada. |
| 77 | A. G. | 12/24/2007 | Package sent via commercial interstate carrier from Florida, to Spokane, Washington |
| 78 | A. G. | 01/15/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Marco Island, Florida. |
| 79 | A. G. | 03/14/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Marco Island, Florida. |
| 80 | A. G. | 07/10/2008 | Package sent via commercial interstate carrier from Mashpee, Massachusetts, to Spokane Washington. |
| 81 | P. M. | 03/25/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Suquamish, Washington |
| 82 | P. M. | 08/08/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Suquamish, Washington |
| 83 | D. N. | 06/15/2007 | Package sent via the Postal Service or commercial interstate carrier from Spokane, Washington, to Grass Valley, California. |
| 84 | D. N. | 09/12/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Grass Valley, California |
| 85 | B. N. | 09/08/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Brier, Washington |

INDICTMENT - 31

P11025lc.JBA.wpd

| 86 | J. N. | 06/01/2007 | Package sent via commercial interstate carrier from Spokane, Washington, to Sequim, Washington |
| 87 | J. N. | 06/29/2007 | Package sent via commercial interstate carrier from Spokane, Washington, to Sequim, Washington |
| 88 | J. N. | 07/19/2007 | Package sent via commercial interstate carrier from Spokane, Washington, to Sequim, Washington |
| 89 | J. N. | 07/03/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Sequim, Washington |
| 90 | J. N. | 08/19/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Sequim, Washington |
| 91 | M. P. | 04/08/2008 | Package sent via commercial interstate carrier from Spokane, Washington, to Marco Island, Florida |
| 92 | L. R. | 07/25/008 | Package sent via commercial interstate carrier from Spokane, Washington, to Boston, Massachusetts |
| 93 | L. R. | 08/02008 | Package sent via commercial interstate carrier from Spokane, Washington, to Boston, Massachusetts |

All in violation of Title 18 United States Code Section 1341.

### International Money Laundering
### 18 U.S.C. §§ 1956(a)(2)(A), 2
### (Counts 94-110)

74.    Paragraphs 1 through 70 above are hereby re-alleged and incorporated into the counts charging International Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A), and 2, as if fully set forth in each.

75.    Beginning on or about October 23, 2006 and continuing through on or about November 14, 2007, Defendant NELSON and the Corporate Defendants did knowingly transport, transmit and transfer and attempt to do so, monetary instruments or funds, from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud and mail fraud as set forth in Counts 1 through 93 above as follows:

INDICTMENT - 32
P110251c.JBA.wpd

| Count | Date | Description |
|-------|------|-------------|
| 94 | 11/20/2006 | Transfer of $50,000 from Bank of America account XXXX9110 to Canadian Imperial Bank of Commerce account XX-X7713 |
| 95 | 11/24/2006 | Transfer of $70,000 from Bank of America account XXXX9110 to Canadian Imperial Bank of Commerce account XX-X7713 |
| 96 | 11/27/2006 | Transfer of $50,000 from Bank of America account XXXX9110 to Canadian Imperial Bank of Commerce account XX-X7713 |
| 97 | 11/29/2006 | Transfer of $40,000 from Bank of America account XXXX9110 to Canadian Imperial Bank of Commerce account XX-X7713 |
| 98 | 11/30/2006 | Transfer of $60,000 from Bank of America account XXXX9110 to Canadian Imperial Bank of Commerce account XX-X7713 |
| 99 | 12/04/2006 | Transfer of $70,000 from Bank of America account XXXX9110 to Canadian Imperial Bank of Commerce account XX-X7713 |
| 100 | 12/07/2006 | Transfer of $70,000 from Bank of America account XXXX9110 to Canadian Imperial Bank of Commerce account XX-X7713 |
| 101 | 12/22/2006 | Transfer of $85,200.65 from Canadian Imperial Bank of Commerce account XX-X4018 to Bank of America account 36309110 |
| 102 | 01/19/2007 | Transfer of $50,000 from Bank of America account XXXX9110 to Bank of Montreal account  XXX5-829 |
| 103 | 02/09/2007 | Transfer of $35,000 from Bank of America account XXXX9110 to Bank of Montreal account  XXX5-829 |
| 104 | 02/15/2007 | Transfer of $30,000 from Bank of America account XXXX9110 to Bank of Montreal account  XXX5-829 |
| 105 | 02/22/2007 | Transfer of $50,000 from Bank of America account XXXX9110 to Bank of Montreal account  XXX5-829 |
| 106 | 03/27/2007 | Transfer of $45,000 from Bank of America account XXXX9110 to Bank of Montreal account  XXX5-829 |
| 107 | 04/16/2007 | Transfer of $30,000 from Bank of America account XXXX9110 to Bank of Montreal account  XXX5-829 |
| 108 | 05/14/2007 | Transfer of $40,000 from Bank of America account XXXX9110 to Royal Bank of Canada account 101-500-7 |
| 109 | 10/26/2007 | Transfer of $47,564.68 from Bank of America account XXXX9110 to Bank of Montreal account  XXX5-829 |
| 110 | 11/14/2007 | Transfer of $25,000 from Bank of America account XXXX9110 to Bank of Montreal account XXX5-829 |

All in violation of Title 18 United States Code Sections 1956(a)(2)(A), and

INDICTMENT - 33

P11025lc.JBA.wpd

2.

## NOTICE OF CRIMINAL FORFEITURE ALLEGATIONS

76. WIRE FRAUD

The allegations contained in Counts 1 - 71 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the wire fraud offenses, in violation of 18 U.S.C. § 1343 set forth in Counts 1 - 71 of this Indictment, the Defendant, Doris E. Nelson, and Corporate Defendants, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.   The property to be forfeited includes, but is not limited to, the following:

1. REAL PROPERTY

Real property located at 1801 West Broadway Avenue, Spokane, Washington, legally described as follows:

Lots 11 and 12, Block 3, IDE AND KAUFMAN'S ADDITION, as per plat recorded in Volume "A" of Plats, page 67, records of Spokane County;

Situate in the City of Spokane, County of Spokane, State of Washington.

Together with all appurtenances, fixtures, attachments, and improvements thereto and thereupon.

Subject to easements, restrictions, reservations and covenants of record.

2. MONEY JUDGMENT

A sum of money equal to $19,302,637.40 in United States currency, representing the total amount of gross proceeds obtained as a result of the wire fraud offense(s).

3. U.S. CURRENCY

-Approximately $8,280.00 in United States currency seized by FBI from Doris and Dennis Nelson, on or about April 6, 2010, in Colbert, Washington.

INDICTMENT - 34
P11025lc.JBA.wpd

4. <u>CONVEYANCES</u>

-2008 Mercedes-Benz S550, Washington License Plate 455 XHZ, VIN: WDDNG86X98A180613;

-2008 Chevrolet Corvette, Washington License Plate 407 YDA, VIN: 1G1YY36W885119060;

-2007 Yamaha snowmobile, Model Number:  RXW10WB, Washington License Plate: 184052S, VIN: JYE8FT0057A006295;

-2007 Yamaha snowmobile, Model Number:  RXW10WB, Washington License Plate: 184053S, VIN: JYE8FT0027A006996;

-2008 Newmans Snowmobile Trailer, Model Number: 1STAV811-1, Washington License Plate: 3131UG, VIN: 5A8AF141772045724;

-2007 Crownline 19ft Boat, HIN: JTC67539J607, Registration Number: WN9447NU; and,

-2007 Heritage Boat Trailer, Washington License Plate: 7678TK, VIN  4APCB191371000664.

5. <u>JEWELRY</u>

All precious gemstones, precious metals and jewelry seized on or about April 6, 2010, from Doris and Dennis Nelson, including, but not limited to the following list:

(1) ladies sapphire and diamond necklace;

(1) 8.29 carat oval cut Paraiba tourmaline ;

(1) 5.2 carat cushion cut Paraiba tourmaline ;

(1) 1.68 carat Padparasca sapphire ;

(1) 1.24 carat-14 carat green tourmaline ring;

(1) 1.34 carat Platinum ring set marquise cut alexandrite ;

(1) Ruby and diamond bracelet;

(1) 23.77 carat triple row Alexandrite sapphire bracelet;

(1) Dyed blue pearl necklace;

(1) Double strand dyed black pearl necklace w/diamond clasp;

(1) Pair of diamond sapphire and ruby earrings;

(1) Ladies diamond tanzanite ring;

(1) Gold and yellow diamond ring;

INDICTMENT - 35

P11025lc.JBA.wpd

1    (1) Diamond and gold bangle bracelet, missing one diamond on the end;

2

3    (1) 5.57 carat sapphire diamond ring;

4    (1) Ruby round cabochon ring;

5    (1) Pair of tanzanite earrings;

6    (1) Azurite pendant with diamonds;

7    (1) 14 karat gold pendant w/ multiple diamonds and chain;

8    (1) Pair of 18 karat white gold chandelier diamond earrings ;

9    (1) Pair of 14 karat 4-prong diamond earrings ;

10    (1) 14 karat yellow gold diamond ring;

11    (1)Ladies diamond and sapphire loop earrings ;

12    (1) Pair of diamond earrings;

13    (1) Topaz pendant;

14    (1) Sterling silver necklace;

15    (1) Pair of costume chandelier earrings;

16    (1) Pair of 14 karat gold earrings;

17    (1) Pair of gold circle/dangle earrings;

18    (1) Pair of 1/2 carat diamond stud earrings;

19    (1) Pair of 14 karat oval blue topaz stud earrings;

20    (1) Pair of 10 karat white gold blue topaz' 'J" hoop earrings ;

21    (1) Pair of 14 karat white gold earrings w/rubies and diamonds;

22    (1) Pair of 18 karat yellow and white gold Raymond Nak earrings;

23    (1) Pair of 14 karat diamond and ruby dangle earrings;

24    (1) Pair of 18 karat gold designer earrings w/ 3.7 karat diamond total weight;

25    (1) Sterling silver pendant w/diamonds;

26    (1) 14 karat yellow gold opal-inlay pendant w/diamonds;

27    (1) 14 karat yellow gold pendant w/peridot and diamonds;

28    (1) Diamond circle pendant w/chain;

INDICTMENT - 36

P11025lc.JBA.wpd

1   (1) Diamond heart necklace;

2   (1) free form 14kt diamond earrings;

3   (1) free form pendant;

4   (1) white gold band w/3 rows of diamonds;

5   (1) fancy tennis bracelet with diamonds;

6   (1) 14kt white gold blue topaz diamond ring;

7   (1) Set of three 14kt white gold heart rings w/diamonds;

8   (1) 10kt yellow gold ring w/aquamarine and diamonds;

9   (1) 14kt gold ring w/synthetic opal inlay and diamonds;

10  (1) 14kt white gold ring w/diamond and sapphire channel set;

11  (1) 14kt yellow gold ring w/channel set;

12  (1) 14kt gold fashion ring;

13  (1) 10kt yellow & white gold ring w/blue topaz;

14  (1) 14kt yellow & white gold diamond ring;

15  (1) 14kt white gold ring w/sapphire and diamonds;

16  (1) 14kt white gold ring w/ruby and diamonds;

17  (1) 14kt yellow and white gold diamond ring;

18  (1) blue box w/2 rings:
         1)14kt yellow and white gold diamond ring;
19       2)10kt yellow gold mothers ring;

20  (1) black box containing : (1) ring w/imitation diamond in center,
    genuine diamonds on the side;
21
22  (1) 14kt white gold ring w/amethyst;

23  (1) 14kt yellow gold w/center st(1) missing;

24  (1) 10kt yellow & white gold ring w/emeralds and diamonds;

25  (1) 14kt yellow & white gold ring w/blue and white diamonds;

26  (1) 14kt yellow gold ring w/ alexandrite and whites sapphire;

27  (1) 14kt white gold ring w/ 5 diamonds;

28  (1) 14kt white gold ring w/ 3 diamonds;

INDICTMENT - 37
P11025lc.JBA.wpd

1    (1) 14kt white gold ring w/blue and white diamonds;

2    (1) imitation ring w/rhinestones;

3    (4) loose black diamonds;

4    (1) loose oval grayish star sapphire;

5    (1) loose pear shape emerald;

6    (1) loose purple tourmaline;

7    (1) ladies Rolex watch, solid gold w/diamond dial;

8    (1) Ritmo Mundo stainless steel watch;

9    (1) Cartier gold ladies 18kt rose gold watch;

10    (1) Rolex Cellinissma 18kt white gold watch;

11    (1) Citizen yellow and white gold watch;

12    (1) Christian Geneve 14kt gold watch w/diamonds;

13    (2) bangle bracelet, silver-gold filled;

14    (1) 18kt white gold bangle bracelet;

15    (1) 14kt yellow gold bangle bracelet, floral design;

16    (1) 14kt yellow gold bangle bracelet;

17    (1) bangle bracelet, silver-gold filled;

18    (1) 14kt yellow gold bangle bracelet, floral design;

19    (1) white gold flex bracelet, blue topaz w/diamonds;

20    (1) 14kt gold bangle bracelet w/diamonds;

21    (1) 18kt diamond bangle bracelet;
     (1) 14kt yellow gold bracelet;
22
     (1) 10kt gold diamond bracelet;
23
     (1) 10kt gold bracelet w/heart charm;
24
     (1) 10kt gold diamond tennis bracelet;
25
     (1) Black Hills gold bracelet (worn/rough shape);
26
     (1) diamond bracelet;
27
     (1) 14kt gold tennis bracelet;
28

INDICTMENT - 38
P11025lc.JBA.wpd

1   (1) 14kt white gold bracelet w/blue topaz;

2   (1) 14kt gold tennis bracelet w/diamonds and sapphires;

3   (1) 10kt yellow gold diamond tennis bracelet;

4   (1) Omega bracelet w/diamonds;

5   (1) 14kt gold link bracelet w/diamonds;

6   (1) 18kt gold bracelet w/diamonds (rough shape/diamonds missing);

7   (1) 14kt gold necklace, 24";

8   (1) 14kt gold necklace, 30";

9   (1) 14kt gold rope chain necklace, 17";

10   (1) 18kt gold designer necklace w/diamonds, 34";

11   (1) 14kt Omega necklace (no length listed);

12   (1) Fred Meyer necklace w/red & green st(1)s;

13   (1) necklace w/diamonds and rubies;

14   (1) set of matching red heart earrings and necklace;

15   (1) South Sea Tahitian graduated strand of pearls;

16   (1) dyed black pearl necklace w/10kt clasp;

17   (1) dyed blackish/green pearl necklace w/10kt clasp;

18   (1) 18" cultured pearl necklace w/yellow gold clasp (needs to be
     re-strung); and,
19
     (1) cultured pearl necklace with 10kt white gold clasp.
20

21   77. <u>MAIL FRAUD</u>

22       The allegations contained in Counts 72 - 93 of this Indictment are hereby

23   realleged and incorporated by reference for the purpose of alleging forfeitures

24   pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

25       Upon conviction of the mail fraud offenses, in violation of 18 U.S.C. § 1341

26   set forth in Counts 72 - 93 of this Indictment, the Defendant, Doris E. Nelson, and

27   Corporate Defendants, shall forfeit to the United States of America, pursuant to 18

28   U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal,

INDICTMENT - 39
P110251c.JBA.wpd

which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following:

1. <u>REAL PROPERTY</u>

Real property located at 1801 West Broadway Avenue, Spokane, Washington, legally described as follows:

Lots 11 and 12, Block 3, IDE AND KAUFMAN'S ADDITION, as per plat recorded in Volume "A" of Plats, page 67, records of Spokane County;

Situate in the City of Spokane, County of Spokane, State of Washington.

Together with all appurtenances, fixtures, attachments, and improvements thereto and thereupon.

Subject to easements, restrictions, reservations and covenants of record.

2. <u>MONEY JUDGMENT</u>

A sum of money equal to $15,746,082.88 in United States currency, representing the total amount of gross proceeds obtained as a result of the mail fraud offense(s).

3. <u>U.S. CURRENCY</u>

-Approximately $8,280.00 in United States currency seized by FBI from Doris and Dennis Nelson, on or about April 6, 2010, in Colbert, Washington.

4. <u>CONVEYANCES</u>

-2008 Mercedes-Benz S550, Washington License Plate 455 XHZ, VIN: WDDNG86X98A180613;

-2008 Chevrolet Corvette, Washington License Plate 407 YDA, VIN: 1G1YY36W885119060;

-2007 Yamaha snowmobile, Model Number: RXW10WB, Washington License Plate: 184052S, VIN: JYE8FT0057A006295;

-2007 Yamaha snowmobile, Model Number: RXW10WB, Washington License Plate: 184053S, VIN: JYE8FT0027A006996;

-2008 Newmans Snowmobile Trailer, Model Number: 1STAV811-1, Washington License Plate: 3131UG, VIN: 5A8AF141772045724;

INDICTMENT - 40
P11025lc.JBA.wpd

-2007 Crownline 19ft Boat, HIN: JTC67539J607, Registration Number: WN9447NU; and,

-2007 Heritage Boat Trailer, Washington License Plate: 7678TK, VIN 4APCB191371000664.

5. JEWELRY

All precious gemstones, precious metals and jewelry seized on or about April 6, 2010, from Doris and Dennis Nelson, described herein in paragraph 76, subparagraph 5.

78. INTERNATIONAL MONEY LAUNDERING

The allegations contained in Counts 94 - 110 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

Upon conviction of the international money laundering offenses, in violation of 18 U.S.C. §§ 1956(a)(2)(A), and 2, set forth in Counts 94 - 110 of this Indictment, the Defendant, Doris E. Nelson, and Corporate Defendants, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1) any property, which constitutes or is derived from proceeds obtained directly or indirectly as a result of such violation(s). The property to be forfeited includes, but is not limited to, the following:

1. REAL PROPERTY

Real property located at 1801 West Broadway Avenue, Spokane, Washington, legally described as follows:

Lots 11 and 12, Block 3, IDE AND KAUFMAN'S ADDITION, as per plat recorded in Volume "A" of Plats, page 67, records of Spokane County;

Situate in the City of Spokane, County of Spokane, State of Washington.

Together with all appurtenances, fixtures, attachments, and improvements thereto and thereupon.

Subject to easements, restrictions, reservations and covenants of record.

2. MONEY JUDGMENT

INDICTMENT - 41

P110251c.JBA.wpd

A sum of money equal to $847,765.33 in United States currency, representing the total amount of gross proceeds obtained as a result of the international money laundering offense(s).

3. U.S. CURRENCY

-Approximately $8,280.00 in United States currency seized by FBI from Doris and Dennis Nelson, on or about April 6, 2010, in Colbert, Washington.

4. CONVEYANCES

-2008 Mercedes-Benz S550, Washington License Plate 455 XHZ, VIN: WDDNG86X98A180613;

-2008 Chevrolet Corvette, Washington License Plate 407 YDA, VIN: 1G1YY36W885119060;

-2007 Yamaha snowmobile, Model Number: RXW10WB, Washington License Plate: 184052S, VIN: JYE8FT0057A006295;

-2007 Yamaha snowmobile, Model Number: RXW10WB, Washington License Plate: 184053S, VIN: JYE8FT0027A006996;

-2008 Newmans Snowmobile Trailer, Model Number: 1STAV811-1, Washington License Plate: 3131UG, VIN: 5A8AF141772045724;

-2007 Crownline 19ft Boat, HIN: JTC67539J607, Registration Number: WN9447NU; and,

-2007 Heritage Boat Trailer, Washington License Plate: 7678TK, VIN 4APCB191371000664.

5. JEWELRY

All precious gemstones, precious metals and jewelry seized on or about April 6, 2010, from Doris and Dennis Nelson, described herein in paragraph 76, subparagraph 5.

If any of the above-described forfeitable property, as a result of any

act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

INDICTMENT - 42

P11025lc.JBA.wpd

1   it is the intent of the United States,  pursuant to 21 U.S.C. § 853(p) as incorporated

2   by 18 U.S.C. § 981(b)(1) as incorporated by 28 U.S.C. § 2461, and/or 18 U.S.C.

3   § 982(b), to seek forfeiture of any other property of said defendant(s) up to the

4   value of the forfeitable property described above.

5

6        DATED this _16_<sup>TH</sup> day of November, 2011.

7                      A TRUE BILL

8

9

10

11  Michael C. Ormsby
    United States Attorney

12

13

14  Tyler H. L. Tornabene
    Assistant United States Attorney

15

16

17

18  K. Jill Bolton
    Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28

INDICTMENT - 43
P11025lc.JBA.wpd